IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| LEA E. THETFORD, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
| v. | )  No. 24-cv-01020-STA-jay |
| | ) |
| BRADFORD SPECIAL SCHOOL DISTRICT, | ) |
| | ) |
|     DEFENDANT. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    Plaintiff Lea E. Thetford filed this lawsuit against her former employer, Bradford Special School District, alleging claims of disability discrimination under the Americans with Disability Act Amendments Act, 42 U.S.C. §12101, *et seq*. ("ADAAA"), age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, *et seq*. ("ADEA"), and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964.  Defendant has filed a motion for summary judgment (ECF No. 31), Plaintiff has filed a response to the motion (ECF No. 33), and Defendant has filed a reply to the response. (ECF No. 35.) For the reasons set forth below, Defendant's motion is **GRANTED**.

Standard of Review

    Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review all the

evidence and draw all reasonable inferences in favor of the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court views the evidence in the light most favorable to the nonmoving party, and it "may not make credibility determinations or weigh the evidence." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014). These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A party asserting that a fact is disputed can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact. *See*, *e.g.*, *Thomas v. Clarksville Montgomery Cnty. Sch. Sys.,* 2022 WL 1129643, at *3 (M.D. Tenn. Apr. 15, 2022)

The Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson.*, 477 U.S. at 251–52. The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

2

The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

Statement of Undisputed Material Facts

Pursuant to Local Rule 56.1, the parties have submitted the following statements of facts (Def's St. of Mat. Facts, ECF No. 31-12; Pl's St. of Mat. Facts, ECF No. 33), which are undisputed unless otherwise noted.[1]

In May 2003, Plaintiff Lea Thetford began working for Defendant Bradford Special School District as a food service worker. Plaintiff was a non-certified, "at-will" employee at all times while employed with Defendant.

Daniel Black has been the Director of Schools for Defendant for the last eighteen years.

Throughout Plaintiff's tenure as a food service worker for Defendant, she only had two supervisors – Carolyn Cates and Paula Chris Griffin. Griffin was promoted to cafeteria manager after Cates retired from that position. While Plaintiff spoke positively about working for Cates, the professional relationship between Plaintiff and Griffin deteriorated over time after Griffin became Plaintiff's supervisor; this led Plaintiff and three other food service workers to complain about Griffin to Black. This complaint occurred several years before Plaintiff's termination.

In March 2021, more than a year before Plaintiff's termination, Plaintiff was temporarily placed on restricted work duties that prohibited her from mopping or sweeping due to shortness of breath and heart-related problems. Griffin complied with Plaintiff's work duty restrictions by allowing her to sit as needed. Griffin extended this accommodation from the original expiration

---

[1] The facts are stated for the purpose of deciding this motion only.

date of March 26, 2021, to April 12, 2021. Plaintiff returned to her full job duties shortly after her accommodation period ended and continued performing those duties until her termination. Griffin also accommodated Plaintiff in February 2022 by allowing her to sit as needed until she recovered from pneumonia.

Sometime in March 2022, Griffin informed the cafeteria workers that June 3, 2022, would be the last regular workday of the school year and that it was mandatory for them to work that day and during the two-week summer program in June. Plaintiff contends that she advised Griffin that she was unable to work because of her health issues and did not show up for work on June 3, 2022. Plaintiff's last day of work was May 19, 2022.

Plaintiff admitted in her deposition that she did not have an actual medical diagnosis of Peripheral Vascular Disease ("PVD") at the time of her termination but contends that her condition had "started" prior to her termination.

A letter from Plaintiff's physician, Dr. Jason Myatt, dated July 24, 2022, indicates that her "work up" for PVD was still ongoing at that time.

Plaintiff asserts that a doctor also gave her a letter in May 2022 stating that she could not work the two-week summer program and that her husband took the letter to the school and gave it to "whoever came to the door" with instructions to give it to "Chris." She does not know if the person who answered the door worked in the cafeteria or somewhere else in the school. She did not keep a copy of the letter and has no idea what happened to it. Griffin denies receiving the May letter. Griffin testified that Plaintiff's heart issues in March 2021 and pneumonia in February 2022 were the only medical problems of which she was aware.[2]

---

[2] Plaintiff does not claim that these health issues were disabling.

Plaintiff's position with Defendant was terminated on or about June 7, 2022, after Griffin consulted Black. Even though Black is the final decisionmaker on employment actions for Defendant, he oversees more than 100 employees within the school system. Black, thus, relies on school department supervisors to carry out their supervisory duties and keep him apprised of situations so he can make informed employment decisions and effectively carry out his other duties as Director of Schools.

Defendant's stated reasons for Plaintiff's termination were Plaintiff's "no call, no show" on June 3, 2022, and her persistent attitude problems with Defendant's other employees, students, and administration. Plaintiff acknowledges that an employee skipping work without notice or explanation would be grounds for an employer to terminate that employee.

At Plaintiff's request, an investigation was conducted by Defendant's complaint manager, Jerry Diviney. He determined that Plaintiff had not been subjected to disability discrimination or age discrimination by Defendant.

At the time of her termination, Plaintiff was approximately sixty-two years old. Black is older than Plaintiff, and Griffin is nearly the same age as Plaintiff and is now retired. Cafeteria workers Plaintiff's age remain employed by Defendant. Other employees of Defendant outside the cafeteria are Plaintiff's age or older. Griffin hired a seventy-year-old cafeteria worker to assist with the 2022 summer lunch program. Plaintiff believes that a woman in her mid-forties replaced her.

During the relevant time period, 75% of Defendant's cafeteria workers were 40 years of age or older and more than one third were age 60 or older, and 20% of Defendant's total staff were age 60 or older with four employees being in their 70s.[3]

---

[3] Plaintiff states that she cannot verify this information and, therefore, denies it. However, she

Analysis

Title VII

Plaintiff has alleged a hostile work environment claim under Title VII. However, as noted by Defendant, Plaintiff did not raise this claim in her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), although she did raise her ADAAA and ADEA claims. (EEOC Chrg., ECF No. 31-8.) Exhaustion of administrative remedies is a precondition to filing a Title VII lawsuit. *See Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008) (citing *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002); *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991)). That is, as a general rule, a plaintiff must first file a timely charge with the EEOC before pursuing an employment discrimination action under Title VII. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). The EEOC charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Id. See also* 29 C.F.R. § 1601.12(b); *Williams v. CSX Transp. Co.*, 643 F.3d 502, 508 (6th Cir. 2011). As such, plaintiffs cannot bring discrimination (or, in this case, hostile environment) claims in a lawsuit that were not included in an EEOC charge. *Younis*, 610 F.3d at 361 (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)).

Defendant failed to address the failure to exhaust in her response – instead, merely arguing that she was, in fact, subjected to a hostile environment. Nor has she presented any grounds for the Court to apply the doctrines of waiver, estoppel, and equitable tolling. *See Crawford v. Tennessee, Dep't of Fin. & Admin., Div. of Mental Retardation Servs.*, 2010 WL 1838736, at *1 (M.D. Tenn. Mar. 23, 2010), report and recommendation adopted, 2010 WL 183881 (M.D. Tenn. May 5, 2010) (pointing out that a plaintiff must demonstrate facts showing

---

has pointed to nothing in the record to show that it is not a true statement.

her diligence in pursuing her claim). It is well-settled that failure to timely exhaust administrative remedies is an appropriate basis for dismissal of a Title VII action. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Accordingly, Plaintiff's Title VII hostile environment claim is dismissed on the ground that she failed to exhaust her administrative remedies. *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 475 (6th Cir. 2008) ("[The plaintiff] failed to exhaust her hostile environment claim, as she offered no evidence that the EEOC actually investigated this claim or that such claims could reasonably be expected to grow out of the charge.").

ADAAA

Plaintiff alleges that she is disabled under the ADAAA. She specifically claims that her PVD "substantially limits one or more major life activities" within the meaning of 42 U.S.C. § 12102(1)(A). She further alleges that Defendant was aware of this condition and terminated her employment on the basis of her disability when she asked for a reasonable accommodation, *i.e.*, not working the two-week summer lunch program.

The ADAAA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual with regard to job application procedures, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a).[4] Under the ADAAA, a plaintiff may establish disability discrimination by

---

[4] Having concluded that the courts were defining "disability" too narrowly, Congress amended the ADA in 2008 to state that the term should be construed "in favor of broad coverage ..., to the maximum extent permitted by the [ADA's] terms." 42 U.S.C. § 12102(4)(A); ADA Amendments Act ("ADAAA"), Pub. L. No. 110-325, § 2, 122 Stat. 3553 (2008). Congress also rejected a number of standards formulated by the Supreme Court, such as the requirement that the impairment be "permanent or long-term" to qualify as a disability under the ADA. 42 U.S.C. § 12102(4)(D) ("An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."); ADAAA § 2(b)(4) (stating that a purpose of ADAAA is to "reject ... standards enunciated in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002)," which included the requirement that an impairment's impact be "permanent or long-term" to qualify as a "substantial limitation"). Congress cautioned that

7

direct evidence by showing that: (1) she is disabled within the meaning of the statute; (2) she is otherwise qualified to perform the essential functions of the job she held or desired, with or without reasonable accommodation; and (3) she suffered an adverse employment action because of a disability. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1106–07 (6th Cir.2008); *Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001). When a plaintiff seeks to establish discrimination through indirect, rather than direct, evidence, the Sixth Circuit requires the plaintiff to first make a prima facie case, followed by the *McDonnell Douglas*[5] burden-shifting analysis. To establish a prima facie case, a plaintiff must establish that (1) she is disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Whitfield v. Tennessee*, 639 F.3d 253, 258 (6th Cir. 2011); *see also Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

If the plaintiff establishes a prima facie case by means of circumstantial (indirect) evidence, under the burden-shifting framework of *McDonnell Douglas*, the burden of production shifts to the defendant, who must provide a legitimate, non-discriminatory reason for the adverse employment decision.[6] Lastly, the burden of production shifts back to the plaintiff, who must then establish that the proffered reason is a pretext for discrimination. *Wright v. Murray Guard,*

---

"the question of whether an individual's impairment is a disability ... should not demand extensive analysis." ADAAA § 2(b)(5).

[5] *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973)

[6] *McDonnell Douglas* is applicable to claims under the either the ADA or the ADAAA. *See Veith v. Tyson Fresh Meat, Inc.*, 2022 WL 1231229, at *9 (M.D. Tenn. Apr. 26, 2022) (citing *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008)).

8

*Inc.*, 455 F.3d 702, 707 (6th Cir. 2006). The plaintiff may establish pretext by showing that (1) the stated reasons had no basis in fact; (2) the stated reasons were not the actual reasons; or (3) the stated reasons were insufficient to explain the defendant's action. *Id.* at 707-08. "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993). The Court is mindful that a plaintiff's burden at the summary judgment stage "is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) (citation omitted).

Under either the direct or indirect method, the plaintiff must prove that, at all pertinent times, she suffered from a disability as defined by the ADA/ADAAA. *Doren v. Battle Creek Health System*, 187 F.3d 595, 598 (6th Cir. 1999); *Monette*, 90 F.3d at 1179. The ADA/ADAAA is not a general protection for medically afflicted persons. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008) (citing *Bryson*, 498 F.3d at 575). Thus, not all health conditions qualify as a "disability" within the meaning of the ADA/ADAAA. *Salim v. MGM Grand Detroit LLC*, 106 Fed. App'x 454, 459 (6th Cir. 2004) (citing *Nawrot v. CPC Int'l*, 277 F.3d 896, 903 (7th Cir. 2002)).

Turning now to the facts of this case, the Court finds that Defendant has refuted Plaintiff's allegation that she was disabled at the time of her termination. Specifically, Plaintiff herself acknowledged that, while her disability had "started" before her termination, she was not actually disabled at that time. (Thetford Depo. p. 30, ECF No. 31-9 ("I didn't [have a disability] at the time, but I do now.")) Moreover, she has pointed to no medical evidence in the record

showing that she was disabled as of her termination date. The only medical evidence in the record is the July 24, 2022 letter from Dr. Jason Myatt. (Myatt Let., ECF No. 31-3.)[7] The doctor's letter was written over a month after Plaintiff was terminated on June 7, 2022, and states only that Plaintiff's medical "work up is currently ongoing…." (*Id.*) The letter does not state that Plaintiff actually had a diagnosis of PVD either prior to or on July 24, 2022. Thus, the letter fails to establish the existence of Plaintiff's claimed disability. Accordingly, there is no direct evidence in the record showing that Plaintiff was disabled.

There are three definitions of "disability" under the ADAAA – (A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. §12102(1). Plaintiff contends that, even if she was not actually disabled, Defendant regarded her as such under §12102(1)(C). The record, again, does not support Plaintiff's contention.

"An individual qualifies as disabled under the regarded-as prong" when she has "(1) establishe[d] that ... she has been subjected to an action prohibited under [the ADAAA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity and (2) the impairment is not transitory and minor." *Watkins v. Shriners Hosps. for Child., Inc.*, 2020 WL 2309468, at *6 (E.D. Ky. May 8, 2020) (quoting *Barlia v. MWI Veterinary Supply, Inc.*, 721 F. App'x 439, 445 (6th Cir. 2018)). "[T]o state the threshold condition of a 'regarded as' ADA claim, an employee need only show that

---

[7] Plaintiff has submitted with her response an affidavit from Dr. Elliot Kurban (Kurban Aff. p. 15, ECF No. 33) that is dated October 3, 2023 – approximately sixteen months after her termination. The affidavit contains no mention of PVD as a medical diagnosis for Plaintiff and, instead, merely asserts that "Ms. Thetford's current medical issues, including severe leg pain and fatigue, were exacerbated by her stressful work environment including standing for long periods of time." *(Id.)* In addition to providing no support for Plaintiff's claim that she was disabled prior to her termination, Dr. Kurban has been stricken as an expert in this matter. (Ord., ECF No. 25.)

[her] employer believed [she] had a 'physical or mental impairment,' as that term is defined in federal regulations." *Harrison v. Soave Enters. L.L.C.*, 826 F. App'x 517, 526 (6th Cir. 2020) (citations omitted). "The employer may then rebut this showing by pointing to objective evidence 'that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) both transitory and minor.'" *Id.* (citations omitted).

In this case, Black, the ultimate decisionmaker, and Griffin, Plaintiff's immediate supervisor, both testified that they had no knowledge of any alleged disability of Plaintiff at the time of her termination. While Plaintiff testified in her deposition that she told Griffin that she had health issues, specifically "ongoing leg problems," that precluded her working during the summer, there is nothing in the record showing that either Plaintiff herself or Griffin understood those health issues to be disabling, nor is there any evidence showing that Black was aware of Plaintiff's health issues.[8]

Plaintiff points to a letter that her husband supposedly took to the school in May 2022 describing some of her health issues.[9] This letter cannot be used to refute Defendant's assertion that it did not regard Plaintiff as being disabled because (1) Plaintiff admits that she does not have a copy of the letter and, therefore, the Court cannot assess its contents and (2) even accepting as true that Plaintiff's husband did, in fact, deliver the letter to someone at the school, Plaintiff acknowledges that her husband did not deliver it to either Black or Griffin. Instead, he

---

[8] In her response, Plaintiff asserts that Dr. Myatt had "formally diagnosed" her with PVD as evidence that Defendant regarded her as being disabled. (Resp. p. 4, ECF No. 33.) Although it is unclear from the record whether Plaintiff ever actually received such a diagnosis, it is undisputed that at the time of her termination she had not received any such diagnosis. Additionally, any opinions by Dr. Kurban as to Plaintiff's limitations, to the extent they are admissible, were made after Plaintiff's termination and are not relevant to the underlying events of the lawsuit.

[9] It is unclear if this letter was written by Dr. Myatt or another doctor.

11

asked the unidentified person who answered the school's doorbell to give the letter to Griffin.[10] Without knowing what was contained in the letter and without any evidence that Griffin received the letter (or was even aware of the letter), the Court cannot rely on Plaintiff's testimony as to the existence of the letter to defeat Defendant's motion for summary judgment. *See Bradley v. Wal-Mart Stores E., LP*, 587 F. App'x 863, 866 (6th Cir. 2014) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)) (reiterating that a properly supported motion for summary judgment may not be defeated by conclusory allegations, speculation, or unsubstantiated assertions).

Plaintiff has failed to refute Griffin's testimony that she knew only of Plaintiff's pneumonia, from which she recovered several months before her termination, and her heart problems the year before. Prior to Plaintiff's recovery, Griffin accommodated Plaintiff by allowing her to sit during work as needed. After Plaintiff's recovery, she no longer needed any accommodations. Additionally, Plaintiff's heart issues from March 2021 were resolved in a few weeks, and Plaintiff was able to return to her full work duties at that time. The parties agree that these health problems were unrelated to PVD and the lower extremity weakness that Plaintiff dealt with after her termination. Moreover, the problems appear to have been transitory and minor and were resolved by the time of Plaintiff's termination. Accordingly, Plaintiff has failed to refute Defendant's evidence that she was not regarded as being disabled.

Because Defendant has pointed to unrefuted facts in the record showing that Plaintiff was not disabled at the time of her termination, nor was she regarded as disabled by Defendant, there

---

[10] Plaintiff's testimony as to what her husband told her about his delivery of the letter is hearsay and not admissible. "[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence ... must be disregarded." *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (quoting U.*S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997)). *See also Longino v. City of Cincinnati*, 2013 WL 2424253 (S.D. Ohio June 4, 2013) (rejecting evidence in the plaintiff's summary judgment response because the plaintiff "failed to assert that the proffered statement [was] admissible under any exception to the hearsay bar").

is no need for the Court to determine if she was "otherwise qualified" for the position. *See Talley*, 542 F.3d at 1106–07 (specifying that, to prevail, a disabled plaintiff must show that she was otherwise qualified to perform the essential functions of the job she held or desired, with or without reasonable accommodation). However, in this case, Defendant has presented evidence, which has not been refuted by Plaintiff, that she was not qualified for her position because of her poor attitude toward other employees and toward the students. In her deposition, Griffin described complaints from students about Plaintiff's being "ill with the kids" and "grumpy." (Griffin Depo. p. 87, ECF No. 31-11.) One student complained to Griffin that Plaintiff was "horrible to the kids" and "gives everyone problems" – "she's just horrible." (*Id.* at p. 88.) Griffin testified that part of the job duties of the cafeteria workers was to "treat the kids with respect" and "get along with them." (*Id.* at p. 89.) Plaintiff also asked a student questions that did not relate to her job and that were "none of her concern." (*Id.*) Additionally, Plaintiff's co-workers complained about her and were "leery" of her. (*Id.* at p. 91.) Plaintiff's behavioral problems were so severe that a former employee of Defendant resigned because of her poor treatment by Plaintiff. (*Id.* at pp. 91-92.) Based on the unrefuted evidence, the Court finds that Plaintiff was not "otherwise qualified" for her job.[11]

Even if Plaintiff had shown the prima facie elements of an ADAAA disability discrimination claim, Defendant has proffered two legitimate, non-discriminatory reasons for terminating Plaintiff: (1) Plaintiff's behavioral problems with coworkers, students, supervisors, and other staff and (2) her absence from work on June 3, 2022, without notice or any explanation to a supervisor. The burden under *McDonnell Douglas* now shifts to Plaintiff to show that

---

[11] Plaintiff conclusorily states in her response that "there is strong evidence [that she] was meeting job expectations. (Resp. p. 6, ECF No. 33.) But, she points to no evidence in the record to support her position.

Defendant's stated reasons for Plaintiff's termination were a pretext for disability discrimination. "[A] plaintiff can show pretext in three interrelated ways" by showing: "(1) that the [employer's] proffered reasons [for the adverse employment action] had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004)). In assessing the evidence before us, we keep in mind that "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id.* at 400 n.4.

Here, Plaintiff has presented no admissible evidence showing that there is a disputed issue of fact as to whether the proffered reasons were pretextual. She has pointed to nothing in the record showing that Defendant's claim that she did not get along with the students or with her co-workers was not based in fact or was not the actual motivation for her termination (in addition to her absence on June 3) or was insufficient to motivate Defendant's action in terminating her employment. Moreover, Plaintiff admitted in her deposition that she was not disabled at the time of her termination, does not know why she was terminated, and Defendant's ultimate decisionmaker had no notice of her alleged disability. The Court finds that Defendant is entitled to summary judgment on Plaintiff's ADAAA claim because she has not established a prima facia case and, even if she had, Defendant has proffered a legitimate, non-discriminatory reason for her termination that Plaintiff has not shown to be pretextual.

ADEA

In addition to her claim that she was terminated because of her disability, Plaintiff contends that she was terminated because of her age. The ADEA prohibits employers from firing an employee "because of" her age; thus, liability only attaches if an employee's age is the "but

for" cause of a termination. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). This case, like most employment discrimination claims, is a circumstantial evidence case governed by *McDonnell-Douglas*'s burden shifting framework since Plaintiff has presented no direct evidence of age discrimination. *See Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006) ("Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, satisfy this criteria.") There is no evidence in this case of any age-related remarks.

The "ultimate question" is whether Plaintiff "was the victim of intentional discrimination." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010). That is, was Plaintiff fired "because of" her "age." *Id.*

> It is equally important to note that the ADEA is not a panacea for every workplace injustice. It does not, for instance, protect employees over the age of 40 from being fired for an unfair reason unrelated to age. Under the ADEA an employer is permitted to fire an employee older than 40 for almost any conceivable reason but one — the employee's age.

*Miles v. S. Cent. Hum. Res. Agency, Inc.*, 2019 WL 13437994, at *3 (E.D. Tenn. Feb. 5, 2019), aff'd, 946 F.3d 883 (6th Cir. 2020).

The Court reiterates that its duty at the summary judgment stage is to determine whether the facts, when reasonably construed in Plaintiff's favor, provide a sufficient evidentiary basis from which a rational jury could reasonably infer that Plaintiff was improperly discriminated against. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). Thus, to prevail under the ADEA at the summary judgment stage, the plaintiff "must show a genuine dispute of material fact that, if resolved in her favor, could persuade a reasonable juror that age was the but-for cause of her termination." *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 323-24 (6th Cir. 2021). Plaintiff has not met this burden.

Under *McDonnell Douglas*, an ADEA plaintiff must first make a prima facie case: (1) she is a member of the protected class; (2) she suffered an adverse employment action; (3) she was otherwise qualified for the position held; and (4) she was replaced by someone outside of the protected class or similarly situated, nonprotected employees were treated more favorably. *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 895 (6th Cir. 2024). If the plaintiff successfully makes a prima facie claim, the burden of production shifts to the employer to identify a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* The burden then shifts back to the plaintiff to prove that the employer's reason was pretextual. *Id.* A plaintiff's prima facie case combined with sufficient evidence to find that the employer's asserted justification is false may, but does not require, the trier of fact to conclude that the employer unlawfully discriminated. *Reeves*, 530 U.S. at 148.

In the present case, it is undisputed that Plaintiff was over forty at the time of her termination. In fact, she was over forty when she was hired by Defendant in 2003. She was sixty-five at the time of the filing of her lawsuit and approximately sixty-two at the time of the relevant events. It is also undisputed that she was terminated from her position. Defendant argues that she cannot show that she was qualified for her position or that she was replaced by someone outside her protected class. The evidence in the record supports Defendant's position.

As discussed above, the undisputed evidence shows that Plaintiff was not qualified for her job because she had a negative attitude toward her co-workers and the students and poor attendance. Defendant deemed having a positive attitude and being present on regularly scheduled workdays to be part of Plaintiff's job duties.

Additionally, Plaintiff has failed to point to evidence showing that she was replaced by someone younger than forty. In fact, Plaintiff testified that a woman in her mid-forties replaced

her. Plaintiff agreed that there are numerous employees her age or older that still work for Defendant's school system. Moreover, Black is older than Plaintiff and is still employed as the Defendant's Director of Schools, and Griffin is the same age as Plaintiff and now retired. *See generally*, *Ali v. Univ. of Miami*, 2019 WL 2281743, at *4 (S.D. Fla. May 14, 2019) ("Plaintiff's supervisors were all over the age of forty, and thus Plaintiff faces a 'difficult burden' because the decisionmakers were within the class of persons protected by the ADEA and thus 'more likely to be the victims of age discrimination than its perpetrators.'" (citation omitted)). Also, Griffin hired a seventy-year-old cafeteria worker around the same time that Plaintiff was terminated, and cafeteria workers Plaintiff's age remain employed by Defendant. Other employees of Defendant outside the cafeteria were Plaintiff's age or older. *C.f.*, *Neary v. Gruenberg*, 2017 WL 4350582, at *4 (S.D.N.Y. July 26, 2017), *aff'd*, 730 F. App'x 7 (2d Cir. 2018), as amended (Apr. 5, 2018) (determining that "the fact that none of the dozens of applicants hired for the CEP was over the age of forty plausibly supports an inference that age may have been a factor considered by decisionmaker"). The Court finds that Plaintiff has not shown a prima facie case of age discrimination, but, even if she has, she cannot show that Defendant's stated reason for her termination was pretextual.[12]

As summarized above, Defendant has proffered a legitimate non-discriminatory reason for Plaintiff's termination, *i.e.*, negative attitude with her co-workers and students and poor attendance. Plaintiff attempts to show pretext with "me too" evidence by pointing to what she claims were adverse actions taken against other employees. The Sixth Circuit has stated that "[e]vidence that an employer engaged in a pattern or practice of discrimination 'may be relevant

---

[12] It is not essential for an ADEA claim for a plaintiff to show that she was replaced by someone younger. However, she must show either that she was replaced by someone outside the protected class, replaced by someone younger, or otherwise discharged because of her age. *Reeves*, 530 U.S. at 142. Plaintiff has not presented any evidence of any of these alternatives.

to proving an otherwise-viable individual claim for disparate treatment under the *McDonnell Douglas* framework.'" *Megivern v. Glacier Hills, Inc.*, 519 F. App'x 385, 399 (6th Cir. May 16, 2013) (quoting *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004)). But, "[w]hether such evidence is relevant is a case by case determination that 'depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case.'" *Griffin v. Finkbeiner*, 689 F.3d 584, 598 (6th Cir. 2012). (quoting *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008)).

Plaintiff points to two other individuals that she believes suffered from age discrimination by Defendant – Carolyn Cates and Dorothy Cantrell. Both Cates and Cantrell were deceased at the time of Plaintiff's deposition.

Cates was Plaintiff's first cafeteria supervisor. Cates allegedly told Plaintiff that Black gave her an ultimatum to retire or be terminated from her position. ("Well, I had a conversation with her, you know, and it was just like she was given the option of retiring or being fired.") However, Plaintiff has no first-hand knowledge of conversations between Cates and Black, and Plaintiff admitted that Cates stated her intention of retiring after her last grandchild graduated. (Thetford Depo. pp. 19-21, ECF No. 31-9.) Griffin testified that Cates merely followed through on her intention to retire, while Black denied ever giving Cates an ultimatum to retire or be terminated from her position. Plaintiff conceded that she had no evidence to refute Defendant's testimony that Cates voluntarily retired. (*Id.* pp. 20-21.)

As for former teacher Dorothy Cantrell, Plaintiff again conceded that her information was speculative, and she could not recall who told her Cantrell had been discriminated against. ("That's just, you know, the talk at the time.") (*Id.* p. 22.) According to Black, Cantrell retired of

18

her own accord. Any evidence concerning the employment of Cates and Cantrell is based on hearsay and is too general to be probative of Plaintiff's claims.

The Court finds that Defendant is entitled to summary judgment on Plaintiff's age discrimination claim under the ADEA because Defendant has refuted Plaintiff's allegations that it discriminated against her because of her age and Plaintiff has pointed to nothing in the record showing that there are disputed issues of fact as to her claim. Most telling is Plaintiff testimony that she does not know why she was terminated. The Court cannot infer age discrimination from the mere fact that Plaintiff was over forty at the time of her termination, just as it cannot infer disability discrimination from the mere fact that Plaintiff complained of "health issues" prior to her termination and later was diagnosed with PVD.

Because Plaintiff has pointed to no facts in the record from which a jury could find that she was discriminated against unlawfully based on her age or disability, the Court **GRANTS** Defendant's motion for summary judgment. The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

IT IS SO ORDERED.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: May 8, 2025.